Good morning, Your Honors. May it please the Court, Michael Carell appearing on behalf of Appellant Dante Love. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Your Honors, this case arises from the fact that Mr. Love, an incarcerated, indigent, pro se litigant, was denied access to necessary discovery before the District Court entered summary judgment. What makes this case remarkable, though, is that the evidence refused to Mr. Love by the District Court was in fact a record document that could have been easily given to him. Specifically, Mr. Love needed access to a copy of his deposition transcript that was lodged in the record by Dr. Modhaddam on June 8, 2010. When Dr. Modhaddam subsequently moved for summary judgment and the District Court granted that motion, it did so with the mistaken belief that Mr. Love had failed to create a genuine issue of material fact as to whether he suffered a heart attack under Dr. Modhaddam's care on February 7, 2008. But had Mr. Love been given access to his transcript, he would have been able to show that he suffered a heart attack on that date and that the subsequent serious decline in his health that followed was directly attributable to Dr. Modhaddam's deliberate indifference. Turning specifically to the transcript, Mr. Love was compelled to give a deposition by court order in April of 2010. Following that deposition, Mr. Love was never given an opportunity to review the transcript. He wasn't given a chance to revise it or submit a RADA. He wasn't even given an opportunity to read it. Instead, a few months later, he was served with a Notice of Lodging of Deposition transcript, but he wasn't served with a copy of a transcript itself. At the same time, the transcript was filed with the District Court. Shortly thereafter, when Dr. Modhaddam moved for summary judgment, he used pages from that deposition, but again, only excerpts, and Mr. Love was required to respond without ever getting to read the context from which those pages had been pulled. Now, Mr. Love, in the process of compiling what is an admirable record from an incarcerated litigant, recognized that the one document he needed to mount a successful defense was his deposition transcript. But how would it show, how would the transcript show a genuine issue of material fact that exists as to whether or not Modhaddam denied him of his rights, of his Eighth Amendment, or violated his Eighth Amendment rights? The key fact in the District Court's grant of summary judgment, Your Honor, was whether or not Mr. Love suffered a heart attack under Dr. Modhaddam's care. In the deposition transcript, the portions that were not filed at the time of summary judgment, Mr. Love testified that he had never had a heart attack before February 7th, and he testified that he didn't have a heart attack between February 7th and August of 2008. The reason Is Mr. Love a medical doctor, or does he have any medical training? He was just stating, you're saying it's just enough that he would say that he never had a heart attack, therefore that creates a material issue of fact? No, Your Honor. What creates the genuine issue of material fact is that Mr. Love is competent to testify to his medical history, as his medical history was not controverted by any other medical evidence. And in August of 2008, when doctors conducted an MRI and found evidence of a myocardial infarction, the medical term for a heart attack, the only date that the court could find that that heart attack occurred, based on Mr. Love's testimony, was February 7th, 2008, the day Dr. Modhaddam failed to treat him. So, and that, Your Honor, is the reason that this additional discovery would not have been fruitless, as is the standard under Jones v. Blandness for cases arising in this way. And in addition to satisfying the fruitlessness requirement, Mr. Love satisfied all of the other requirements of a Rule 56d motion as imposed by this Court on incarcerated litigants. He told the Court exactly what he needed, and he did it no less than four times. He moved to compel. That was denied. He moved for a waiver of the transcript fees. That was denied. He raised his motion in opposition to summary judgment, and that was implicitly denied without any comment by the Court. He renewed it with the district court in his objections. Well, let's go. I guess I just want to make sure I understand the facts here. He suffered some sort of attack, is that correct? It was the claim. Yes, Your Honor. And he was treated for an asthma attack. Yes, Your Honor. By the doctor, correct? Yes, Your Honor. All right. And I guess just trying to figure out what evidence they're showing that Dr. Modhaddam, and I'm not sure if I'm pronouncing that correctly, treatment was the but-for cause of Mr. Love's heart problems after February 7th of 2008. Yes, Your Honor. At this phase, Mr. Love is entitled to all reasonable inferences drawn in his favor. I believe Mr. Love is in his 30s now. He's had this heart issue his entire life, and then within an 18-month period, he went from a stable heart condition to a massive heart attack requiring a pacemaker and a porcine valve, and that rapid and very sudden decline that continued throughout that 18-month period creates an inference that is attributable back to this single incident, since there was no other heart attack in his past. Is there – I mean, so there was nothing. Is there any evidence showing that Mr. Love's heart problems after February 7th of 2008 were not caused by his preexisting heart condition? Not that – I don't believe Mr. Love has anything in the record that proves the negative on that, Your Honor. But again, he's entitled to the inference in his favor, and if it comes down to that dispute, that's a factual dispute left to the jury whether or not the inferences here support a finding in his favor. Well, he had an incident. The doctor treated it as an asthma incident, and so your claim is that because he treated it as an asthma incident instead of a heart condition, his claims should survive. Yes, Your Honor, and there's case law to support that proposition, both the Estate of Carter decision cited in the papers and the Seelock decision, which is strikingly similar on the facts to this case out of the Sixth Circuit, I believe – I'm sorry, Tenth Circuit. In Seelock, the individual presented with unexplained chest pain. The doctor diagnosed – I'm sorry, prescribed, essentially, a medication to prevent anaphylaxis, in a sense, to ease breathing, much like asthma here, placed the patient on two days' observation, which is more than Dr. Motadom did here, and later it was discovered that the patient had a heart attack. And what the court said is, when you're presented with unexplained chest pain, that is a serious medical need, and you must attend to it. And simply prescribing an asthma medication, particularly because this is a heart attack symptom, required additional steps. And in particular, they said it required transport outside of the facility to the hospital. I mean, that was the conclusion of the Tenth Circuit at the summary judgment phase. And the same applies here. Mr. Love presented with even more. He presented with chest pains, shortness of breath, pain in his left arm. Dr. Motadom didn't examine him. Dr. Motadom didn't review the record. But where's the causal link between Dr. Motadom's treatment and any subsequent harm to Mr. Love? The causal link is inferential based on the temporal proximity between Mr. Love's stable condition on February 6, 2008, and his rapid decline thereafter. That's where it comes from at this phase in the summary judgment process. But, okay, because his chest pain subsided and he had no history, as you say, correct? I mean, you agree he had no history, Mr. Love? Of prior heart attacks, that is correct. Right. And his chest pain subsided, but so I'm just trying to figure that out. The fact that Mr. Love's chest pain subsided on that particular day is not necessarily indicative of anything. I mean, Mr. Love doesn't have to die for the heart attack, the failure to treat the heart attack lies to a level of deliberate indifference. In fact, in a state of CART, I'm sorry, in CELOC, the patient did survive. And the court didn't say that because he didn't happen to die as a function of the administration of the wrong medication that that somehow rendered it constitutionally sufficient medical treatment. Instead, it said because of the severity of what was presented to the doctor in that case, he was required to take additional steps, because he was the gatekeeper. And here, Dr. Matadon was the gatekeeper. Mr. Love was on his way out the door to the hospital. The other medical professionals, the nurses and other attendants, had made the determination that it was time to go. Dr. Matadon stepped in and stopped that movement and made Mr. Love stay in the facility and forego the treatment he needed from outside facilities that were better equipped to treat him. I don't quite understand the connection with the deposition. What would the deposition have shown that would have aided his case? The district court made a clearly erroneous factual finding when it stated that the plaintiff admits that he's had many heart attacks over the course of his life, but there's no record citation. And the reason is, is that's not true. If the only heart attack in Mr. Love's entire life was under Dr. Matadon's care, then there is an inferential relationship between his decline that followed. Now, that's an error of the district court. You were making an argument about the deposition. What would it have shown if he'd been able to have it? Mr. Love was unable to present the fact that he had never had a prior heart attack. Why couldn't he testify to that? The only vehicle left available to him was a conclusory self-serving affidavit, and this Court has repeatedly held that conclusory self-serving affidavits filed on the eve of summary judgment are insufficient to raise a genuine issue of material fact. But he's testifying about his own health. Are you saying that was inadmissible? Did he do that? Did he testify to that? Did he submit that declaration? He did not, Your Honor, but arguably he shouldn't have had to. This material was ---- Well, now, we don't know what would have ---- if he didn't present that evidence, I mean, you say that we would have ---- I'm not sure of that at all. Well, he did not inform the district court about his health history. What he informed the district court was that his health history had been misrepresented to the court. And as a liberal ---- as a pro se litigant, he's entitled to a liberal construction of those papers. He explained that ---- Well, why couldn't he testify? I've never had a heart attack. The only way he could have done that would have been through an affidavit. And again, Your Honor, Nelson v. City of Mesa specifically says that if you don't have additional documentation, that's going to be insufficient. And even if he had done it, the response back to him ---- When you're testifying about your own health? It's the fact that it's a conclusory self-serving affidavit. Oh, but did the case you're citing, did that involve a point of self? I don't know, Your Honor. Well, I ---- because he was on his own. He didn't have any counsel at that point. That is correct, Your Honor. So he probably didn't know the law, but I don't know why he didn't say it. He had already said it, Your Honor. And honestly, that information was lodged with the court, just not with him. How was it lodged? It was filed in the district court. An entire copy of his deposition transcript was provided to the district court. It was in Dr. Mottadam's possession. It was never given to Mr. Love. I see my time is up. Thank you. Any questions? Thank you. Good morning, Your Honors. May it please the Court, Jonathan Paul on behalf of Dr. Elia Mohagdam, physician and surgeon at California State Prison, Sacramento. I'd like to briefly make two points this morning. The first being that there is no abuse of discretion on the part of the magistrate judge nor the district court in denying Mr. Love a copy of his deposition transcript or his request to continue hearing on the motion for summary judgment under 56F. And secondly, I would like to discuss the facts of this case insofar as I believe this court can affirm summary judgment on the basis that the only evidence in this case concerning a heart attack is the statement by Dr. Mohagdam that he reviewed the medical records and there is no evidence that Mr. Love suffered a heart attack on February 7, 2008. Moving to my first point, I'd like the court to take notice that the inform-a-pauper statute itself provides no basis for the magistrate judge to afford Mr. Love the relief he's requesting. A review of that statute indicates that the court may waive the requirement for the advancement of fees and costs on appeal, but there is no provision within that statute for the advancement of costs for a deposition transcript. Specifically, Congress saw fit, obviously, to advance costs for fees on appeal and on the original commencement of the action, as well as costs for preparation of deposition transcripts for proceedings conducted in front of the magistrate judge, but not advancement of costs for discovery tools for the litigants. I would also like to point out that the request by Mr. Love for further discovery or to continue hearing on the motion for summary judgment so he could obtain the transcript would have been fruitless, and it's fruitless for two reasons. One, Mr. Love's statement that he had a heart attack is not admissible evidence. That is a medical opinion which he is trying to submit in the guise of a lay opinion. That is not a fact of this case. The fact is Dr. Mahogany testified and declared as part of the motion for summary judgment that he reviewed the medical records. There was nothing in those records to indicate that Mr. Love suffered a heart attack on the date in question. Secondly, it should be noted Mr. Love did not indicate he needed a continuance so that he could secure a declaration from any one of the physicians whose records he makes reference to. I would note that he makes reference to records from UC Davis Medical Center. He makes reference to records from Queen of the Valley Hospital, but not once during the course of discovery in this case did he seek to secure a declaration from any of those individuals as to the care he received. Moving next to the transcript itself, I believe the court is correct in its assessment that had Mr. Love had the transcript, there still would be no triable issue of fact in this case. This is a classic Hutchinson case, and we can see that from Mr. Love's submission of medical records to this court to try to convince it to engage in speculation to lead it to believe that somehow Dr. Mahogany was responsible for a long-term cardiac condition Mr. Love has been suffering from. I would note that counsel and Mr. Love make reference to the fact that the magistrate did incorrectly attribute a statement to Mr. Love. Notably, the magistrate in the findings and recommendations indicated that Mr. Love stated that he had had prior heart attacks, not many, just prior heart attacks. While that is incorrect, that Mr. Love did not testify to that at deposition, what is correct is that as a part of his opposition to the motion for summary judgment, Mr. Love included a MRI revealing a cardiac MRI which revealed that in August of 2007, imaging revealed evidence of a prior myocardial infarction. Thus, to suggest that the July 2008 MRIs of his heart somehow revealed for the first time that he had a heart attack and that in turn must lead to the conclusion that he did suffer a heart attack on February 7, 2008 is incorrect. But was it reasonable for the doctor to treat this as an asthma attack instead of a heart attack? That's an interesting point, Your Honor. I'm glad you brought it up. I believe there's an incorrect version of the facts that's floating in the premise by appellant here. Mr. Love was exposed to pepper spray. When he was brought to the clinic, he was brought there with the doctor having been notified that he had been exposed to O.C. spray, he was having pain in his chest, and he was having difficulty breathing. Mr. Love states that he also reported to Dr. Mahogam that he had pain in his left arm. Notably, the vitals which were taken in the clinic and shared with Dr. Mahogam revealed normal respiration, normal heart rate, normal blood pressure. There was no evidence to Dr. Mahogam, as he declares, to indicate that Mr. Love was in any sort of cardiac arrest at that time. And I would add that although Dr. Mahogam did provide treatment for quote-unquote asthma, he provided an antihistamine and Benadryl to counteract the O.C. spray. He provided corduroy steroids to enlarge the breathing to facilitate Mr. Love's complaint of shortness of breath. And he also provided nitroquick or nitroglycerin to address Mr. Love's concern with regard to his chest pain. He also indicates in his declaration, and I'm speaking about Dr. Mahogam, that he noted Mr. Love had a prior history of atypical chest pain. Now, Mr. Love would ask this court to speculate that somehow, because he had a cardiac catheterization letter, he later had an insertion of a pacemaker placed in, that somehow that is attributable to Dr. Mahogam's action. I'd invite the court to review the record. There's nothing in any of those medical records which indicate that Dr. Mahogam's action in any way caused or necessitated those procedures to occur. Indeed, the evidence indicates that Mr. Love had a long history of heart problems, which are unattributable to the single, single visit that Dr. Mahogam saw him for. Also, I think the magistrate judge is quite correct, we cannot overlook the fact that Mr. Love, within two hours of obtaining treatment, the treatment provided by Dr. Mahogam, was fine. He returned to his cell. He had no other complaints. There's no indication in the record that he returned to clinic the following day to see his primary care physician, as directed by Dr. Mahogam, if he had any further complaints. The evidence in this case, which is suggested on appeal, is that somehow months later the fact that he had a cardiac catheterization is relevant to Dr. Love, or shows that Dr. Love was deliberately indifferent, is simply incorrect. If you also have a policy that you depose a person, particularly a party, and you get a copy of the transcript, and you have it there sitting in your file, your office file, and an incarcerated indigent party did not have a means to obtain a copy of the transcript, then you would not make a copy of the transcript in your office and send it to the incarcerated nonrepresentative party? To be clear, Your Honor, let me answer your question more fully. Generally speaking, when my office receives a certified copy, we do not have the original deposition transcript in our possession yet. It's our policy, upon receipt of the original deposition transcript, to lodge it with the court pursuant to local rules of court. Likewise, because we cite portions of the deposition transcript as a part of our motion for summary judgment, we submit only those portions cited along with, excuse me, in support of the motion for summary judgment. We do not provide plaintiff with a copy of the deposition transcript. The reason we do not do that, and the reason why that is the policy of our office, as I believe, and while I can't speak for other offices, I just speak for my office, is that FRCP 30 specifically provides that each party is entitled to contact their court reporter and to procure a copy of that transcript. I am not at liberty to violate the, I guess I could say the court reporter's work product, so to speak, by providing a free copy of that deposition transcript to Mr. Love or any other pro se indigent. And I would note, to the extent that plaintiff argues that he was somehow entitled or, excuse me, could not submit a declaration because it had been self-serving, again, it's irrelevant in this case. If he were to declare that he didn't have a prior heart attack, that is a medical opinion. He can freely communicate his symptomology. He cannot state whether or not he, in fact, had a myocardial infarction, he lacks the education and training. Well, would the symptomology of the symptoms be sufficient to create a tribulation material effect and make the case go forward? I do not believe so, Your Honor. Again, the evidence in this case, and again, we're overlooking, I think Spopelin overlooks the evidence in this case. We have the declaration of Dr. Mahogany, which the court relied upon in finding summary judgment, stating that in his professional medical opinion, having reviewed the records both before his treatment of Mr. Love on February 7, 2008, and the treatment post-February 7, 2008, he was not of the opinion that Mr. Love suffered a heart attack. Yeah, well, you've got two issues here. You've got the 50-60 issue, and then you've got the summary judgment issue based on the principle of disregard by the medical physician of the condition and treatment under the Eighth Amendment deprivation. This is a Section 1983 case, is it not? Correct. Okay. Thank you. Thank you. Thank you, Your Honor. I think you're out of time, but you'll have two minutes. Thank you, Your Honor. Just two very quick points. First, regarding the court's authority, the local rule in the court in question says that under Local Rule 135d, unless a party expressly waives service, copies of all documents submitted to the court shall be served upon all parties in the action. Mr. Love was not served with a copy of the deposition. It was filed with the court. The second point I'd like to make is the facts that this court must assume under the applicable standard for summary judgment. Dr. Modadam makes much of the fact that Mr. Love, I'm sorry, that Dr. Modadam controverted Mr. Love's arguments, but at this phase in the process, that doesn't matter. The court must assume that Mr. Love suffered a heart attack under Dr. Modadam's care on February 7, 2008. The court must assume that Dr. Modadam did not examine Mr. Love to make his diagnosis, did not review Mr. Love's records to make his diagnosis, but instead simply told him, you're having asthma, here's some asthma medicine and something for chest pain, no one has argued that it was prescribed for a heart attack, and then sent him away. When he went away, his pain intensified to an excruciating level before ultimately subsiding. Now, what evidence did he submit that he did have a heart attack? He did not submit any evidence. He brought a Rule 5060 motion to get the evidence he needed, and that evidence was his deposition. And had he had that deposition Why was the deposition the evidence? Because that was the source of the factual information that he needed, testimony  Well, I thought we heard it argued that only a doctor could have testified that he had a heart attack. I don't believe there's any authority that says that a lay witness can't testify to their knowledge as to their own medical record. And But that would be a self-serving declaration, assuming he submitted a declaration in lieu of a deposition. Yes. Under a deposition, he'd be under the examination of adverse counsel, and therefore would be entitled to greater weight than something filed on the eve of summary judgment by litigant. Your Honor, for these reasons, we ask the Court to reverse and remand for additional proceedings. Thank you. Thank you. The case will be submitted. We appreciate your arguments here today. We're ready to call the next case.
judges: Timlin, Noonan, Murguia